**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Lucas, et al., | No. CV-17-02302-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Tempe Union High School District, | |
| Defendant. | |

Pending before the Court is Defendant Tempe Union High School District's ("Defendant") Motion for Summary Judgment ("Motion," Doc. 57). The Court now rules on the Motion.

## I. BACKGROUND

On September 14, 2018, Defendant filed the pending Motion (Doc. 57). Plaintiffs filed a timely Response (Doc. 62) on November 5, 2018. Defendant then filed a timely Reply on December 3, 2018 (Doc. 69).

The operative, seven-count Complaint (Doc. 25) alleges claims for race- and age-based employment discrimination. (Doc. 25 at 2).

### A. Facts

Plaintiff Tammy Lucas ("Plaintiff") brought this action against Plaintiff's former employer. (Doc. 25 at 1). Plaintiff's husband, Paul Lucas, is also listed as a plaintiff in this case, but only Plaintiff maintained an employment relationship with Defendant at any relevant time. (*Id.*); *see supra* Part III. The following facts are either undisputed or

recounted in the light most favorable to the non-moving party.[1]

Plaintiff is a 51-year-old African-American woman. (Defendant's Statement of Facts ("DSOF"), Doc. 58 ¶ 1; Plaintiff's Statement of Facts ("PSOF"), Doc. 66 ¶ 1; *see also* Doc. 62 at 2). Plaintiff began working as a receptionist at Marcos de Niza High School ("MDN") in 2014 under the supervision of the Assistant Principal, who is Hispanic. (DSOF ¶¶ 2–3, 6; PSOF ¶¶ 2–3, 6). At the time, she was the only African-American in the front office at MDN. (PSOF at 13). Plaintiff's contract was renewed for the school years beginning in 2015 and 2016, but not renewed for the school year beginning in 2017. (DSOF ¶¶ 8, 44; PSOF ¶¶ 8, 44). Plaintiff initially received "good" performance evaluations from Defendant, but Defendant asserts that her performance began to suffer in 2016. (DSOF ¶¶ 10–12; PSOF ¶¶ 10–12). Defendant states, and Plaintiff disputes, that Plaintiff's performance suffered because she neglected her duties of answering the school phone and took personal calls on her cell phone during business hours. (DSOF ¶ 15; PSOF ¶ 15).

In March of 2016, Plaintiff applied for a Student Services position at MDN, but was not selected for the position. (DSOF ¶¶ 24, 27; PSOF ¶¶ 24, 27). Defendant selected a Hispanic individual over Plaintiff. (DSOF ¶ 27; PSOF ¶ 27). Plaintiff states, and Defendant disputes, that she began facing harassing conduct from her Hispanic co-workers immediately after she applied for the Student Services position. (DSOF ¶ 32; PSOF ¶ 32). Plaintiff lodged complaints with the Assistant Principal and other superiors regarding the conduct she encountered, which led to several meetings with superiors. (DSOF ¶¶ 33– 35; PSOF ¶¶ 33–35). Plaintiff suffered negative health events following these meetings and began seeing a therapist. (PSOF at 19). Plaintiff states that her Hispanic co-workers continued their harassing behavior, which included providing false notes about Plaintiff's alleged misbehavior at work to superiors. (PSOF at 20). Plaintiff eventually filed an EEOC

---

[1] While this Order cites specific paragraphs of the parties' respective statement of facts when possible, it can only do so where Plaintiff followed the applicable District of Arizona Local Rule ("Local Rule"). *See* District of Arizona Local Rule Civil 56.1(b) (In a party's required statement of facts, "[e]ach additional fact must be set forth in a separately numbered paragraph"). Where Plaintiff failed to comply with the Local Rules, this Order refers to page numbers in PSOF citations that do not include the applicable paragraph symbol.

charge against Defendant on November 22, 2016. (DSOF ¶ 42; *see also* Doc. 25 at 8).

In March of 2017—after Plaintiff filed her EEOC charge—Plaintiff was placed on a performance improvement plan ("PIP"), citing continued performance-related issues. (DSOF ¶ 42; PSOF ¶ 42). Following the end of that school year, Defendant decided not to renew Plaintiff's employment contract for the subsequent year. (DSOF ¶ 44; PSOF ¶ 44).

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id*. at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id*. A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's

bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id*. at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citations omitted).

## A. Admissibility of Evidence at the Summary Judgment Stage

Although previously silent on the issue of admissibility of evidence at summary judgment, the 2010 revision to Federal Rule of Civil Procedure ("Federal Rule") 56 clarified that "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)); *see also Maurer v. Indep. Town*, 870 F.3d 380, 384 & n.1 (5th Cir. 2017) (noting that the 2010 amendment effectively overruled prior Fifth Circuit precedent that required admissible evidence to oppose summary judgment).

Consistent with the applicable Federal Rules, the Ninth Circuit historically applies a double standard to the admissibility requirement for evidence at the summary judgment stage. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure § 2738* (3d ed. 1998). With respect to the *movant's* evidence offered in support of a motion for summary judgment, Ninth Circuit precedent required that it be admissible both in form and in content. *See Canada v. Blains Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot *support* a motion for summary judgment" (emphasis added); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976) ("Exhibits which have not had a proper foundation laid to authenticate them

cannot *support* a motion for summary judgment" (emphasis added)). "Because verdicts cannot rest on inadmissible evidence and a *grant* of summary judgment is a determination on the merits of the case, it follows that the *moving* party's affidavits must be free of hearsay." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) (internal quotation marks and citations omitted; emphasis in original).

With respect to the *non-movant's* evidence offered in opposition to a motion for summary judgment, the Ninth Circuit stated that the proper inquiry is not the admissibility of the evidence's form, but rather whether the *contents* of the evidence are admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that, at summary judgment, the district court should consider unsworn, inadmissible hearsay statements written by the plaintiff in a diary about her diabetes symptoms to support an ADA discrimination claim); *see also Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment" (emphasis added)). Accordingly, the Ninth Circuit consistently holds that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment. *See Fraser*, 342 F.3d at 1036-37; *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (reasoning that, at summary judgment in an employment discrimination suit, a plaintiff's declaration that a school official "did make [an inflammatory] statement would be enough to establish a genuine issue of fact" despite concerns over hearsay and double hearsay). Thus, "[m]aterial in a form not admissible in evidence may be used to *avoid* . . . summary judgment[.]" *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (emphasis in original)).

Additionally, "unlike objections to foundation and hearsay, objections that evidence is not relevant or is misleading are superfluous at the summary judgment stage." *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2–3 (D. Ariz. Mar. 26, 2014) (internal quotation marks and citations omitted). "'Objections to evidence on the ground that it is irrelevant, speculative, and/or

argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and are thus 'redundant' and unnecessary to consider here." *Patterson v. Reliance Standard Life Ins. Co.*, 986 F. Supp. 2d 1140, 1144 (C.D. Cal. 2013) (quoting *Burch*, 433 F. Supp. 2d at 1119).

## III. PRELIMINARY ISSUES

### A. Defendant's Evidentiary Objections

As a preliminary matter, Defendant objects to several of Plaintiff's exhibits and statements of fact (or evidence underlying the statements) on the grounds that they are inadmissible. (Doc. 69 at 1–3).[2] As detailed herein, however, a non-moving party may establish a genuine issue of material fact at the summary judgment stage by relying on evidence that is not in an admissible form. *See supra* Part II(A). To the extent Plaintiff relies on hearsay evidence to support her claims at this stage, that evidence "could be presented in an admissible form at trial—namely, the plaintiff [or appropriate individual] could testify from her personal knowledge." *Cook v. Lee*, No. CV-17-02569-PHX-DGC (JFM), 2019 WL 2525373, at *3 (D. Ariz. June 19, 2019) (citing *Fraser*, 342 F.3d at 1036). Accordingly, Defendant's evidentiary objections are overruled without prejudice to raise any appropriate objections at trial. Just as Defendant's Reply (Doc. 69) "attempt[s] to object" to various facts offered by Plaintiff "in the context of its legal argument," the Court will do the same in its analysis. (Doc. 69 at 3).[3]

### B. Derivative Claims

Next, Defendant points out that the operative Complaint (Doc. 25) "does not allege facts to support any claim by Plaintiff's husband, Paul Lucas, and [it] does not assert any claim personal to him." (Doc. 57 at 7). Plaintiffs confirm that "[Paul] Lucas has not and did not intend to bring a derivative claim." (Doc. 62 at 2). Consequently, "[Plaintiff]

---

[2] Specifically, Defendant objects to Plaintiff's Exhibits 3, 4, 5, and 8 on the grounds that each exhibit lacks foundation and contains inadmissible hearsay. (*See* Doc. 69 at 1).

[3] The Court notes that "statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context." *Burch*, 433 F. Supp. 2d at 1119.

concedes that [Paul] Lucas's claim . . . should be dismissed." (*Id.*). To the extent the Complaint (Doc. 25) could be read to state a claim by Paul Lucas, Defendant is entitled to summary judgment on any such claim brought by Paul Lucas.

### C.    Punitive Damages

Additionally, the Complaint (Doc. 25) seeks punitive damages for Counts I through VI. (*See* Doc. 25 at 10–14). Defendant points out that "[t]he only defendant here is Tempe Union High School District," and "[p]ublic entities are not subject to punitive damages under federal or state law." (Doc. 57 at 14 (citing 42 U.S.C. § 1981a(b)(1); Ariz. Rev. Stat. § 12-820.04)). Likewise, Plaintiff "concedes" that "the punitive damages claim should be dismissed." (Doc. 62 at 2). Accordingly, the Court finds that Defendant—a public entity cannot be subject to punitive damages in this case.

### D.    Pinpoint Citations

Finally, Defendant argues that Plaintiff's Response (Doc. 62) violates Federal Rule 56(c)(1)(A) by failing to cite "particular parts of materials in the record" in "asserting that a fact cannot be or is genuinely disputed." (*See* Doc. 69 at 3–4 (citing Fed. R. Civ. P. 56(c)(1)(A)). Here, Plaintiff states in her Response (Doc. 62) that she "presented admissible relevant evidence in her [PSOF, ] which is incorporated herein by reference because of page limits." (Doc. 62 at 5). Plaintiff then fails to provide any pinpoint citations to particular parts of the record throughout her entire Response (Doc. 62). (*See generally id.*). Page limits do not excuse a party from providing pinpoint citations in the body of a brief or memorandum. *See* Fed. R. Civ. P. 56(c)(1)(A). Defendant argues that "[t]his omission alone should entitle Defendant to summary judgment." (Doc. 69 at 3). Federal Rule 56(c)(3) states that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Despite Plaintiff's failure to comply with the Federal Rules or Local Rules regarding citations, the Court nevertheless "cull[s] through the record to try to locate evidence for Plaintiff on each claim" where it may be found. (Doc. 69 at 4); *see supra* n.1.[4]

---

[4] While the Court, in its discretion, chose to do so in this instance, it notes that it is under no obligation to consider materials not cited with particularly in the future. *Mason v.*

## IV. DISCUSSION

Plaintiff asserts four types of claims on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981: hostile work environment, disparate treatment, retaliation, and failure to hire. (*See* Doc. 25 at 2). Plaintiff also asserts a single claim under 29 U.S.C. § 623 for failure to hire on the basis of age. (*See id.*). "The Court notes at the outset that legal principles applicable to the Title VII claims apply with equal force to the claims brought under § 1981." *See Newton v. Suncrest Healthcare Ctr., LLC*, No. CV-08-711-PHX-DGC, 2009 WL 4151180, at *1 (D. Ariz. Nov. 23, 2009) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 851 (9th Cir. 2004) (disparate treatment)); *Mannatt v. Bank of Am., NA*, 339 F.3d 792, 798, 800–01 (9th Cir. 2003) (hostile work environment and retaliation)).

### A. Disparate Treatment Claims (Counts I and VI)

Plaintiff asserts disparate treatment claims under 42 U.S.C. § 1981 and Title VII. (*See* Doc. 25 at 2 (Counts I and VI, respectively)).

#### 1. Legal Standard

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e–2(a)(1). "Similarly, § 1981 prohibits [race] discrimination in the 'benefits, privileges, terms and conditions' of employment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)).[5]

Under the United States Supreme Court's *McDonnell Douglas* burden-shifting framework, a plaintiff carries the initial burden to establish "a prima facie case of racial

---

*Ryan*, No. CV 17-08098-PCT-DGC (MHB), 2019 WL 1382468, at *2 (D. Ariz. Mar. 27, 2019) (citing Fed. R. Civ. P. 56(c)(3); and doing the same).

[5] "Claims of disparate treatment arising under Title VII and section 1981 are parallel because both require proof of intentional discrimination. The same standards are used to prove both claims, and facts sufficient to give rise to one are sufficient to give rise to the other." *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985) (internal citations omitted).

discrimination." *Scott v. City of Phoenix*, No. CV-09-0875-PHX-JAT, 2011 WL 3159166, at *4 (D. Ariz. July 26, 2011) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Absent direct evidence of discrimination," as here, "a Title VII plaintiff may prove [her] case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas*." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). To establish a prima facie case under Title VII, the plaintiff must show:

> (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802).

The burden then shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the challenged employment action. *Id.* If the defendant carries its burden, then the plaintiff "is afforded an opportunity to demonstrate that the assigned reason was a pretext or discriminatory in its application." *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993), *as amended on denial of reh'g* (Jan. 26, 1994) (internal quotation marks and citation omitted). "At the summary judgment stage, the plaintiff does not have to prove that the [defendant's] reason for firing her was pretext for discrimination, but the plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the [defendant's] reason was pretextual." *Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2013 WL 6157858, at *6 (D. Ariz. Nov. 25, 2013) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000)).

### 2. Analysis

#### a. Prima Facie Case

First, it is undisputed that Plaintiff is African-American. (DSOF ¶ 1; PSOF ¶ 1). Thus, it is undisputed that Plaintiff belongs to a class of persons protected by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1).

Second, it is undisputed that Plaintiff received positive performance evaluations at the beginning of her employment. (DSOF ¶¶ 9–11; PSOF ¶¶ 9–11). Beginning in 2016, Defendant contends that Plaintiff's performance began to decline. (DSOF ¶ 12). Conversely, Plaintiff contends that "students and teachers were praising [her] performance" throughout her employment, and she only received negative performance evaluations after she applied, and was not selected, for the student services position. (PSOF ¶ 12 (citing Doc. 67-7 at 3, 9 (noting that Plaintiff received an "Employee of the Month" award from staff in 2017))). Plaintiff continues that these negative evaluations were based on "untrue statements" from Plaintiff's Hispanic co-workers who were agitated by her efforts to obtain the student services position over a Hispanic applicant. (PSOF ¶ 12 (citing Doc. 67-7 at 3)). Thus, the Court finds that Plaintiff makes a prima facie showing of satisfactory performance. *See Ellison*, 357 F.3d at 1075. Defendant's conflicting depiction demonstrates that there is a disputed issue of fact regarding Plaintiff's level of performance.

Third, "[f]or claims of disparate treatment under Title VII, an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (internal quotation marks and citation omitted). Here, Defendant concedes that Plaintiff alleges "three actions that could qualify as 'adverse employment actions': (a) Plaintiff was not selected for the Student Services position, (b) she was given unfair write-ups and was placed on a PIP, and (c) her contract was not renewed." (Doc. 57 at 7–8). "The Court agrees that each of the actions constituted an adverse employment action under Title VII." *See, e.g.*, *France v. Johnson*, 795 F.3d 1170, 1172 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015) (reasoning that a plaintiff established a prima facie case of discrimination when not selected for a promotion); *E.E.O.C. v. Evergreen All. Golf Ltd., LP*, No. CV 11-0662-PHX-JAT, 2013 WL 4478870, at *10 (D. Ariz. Aug. 21, 2013) ("placing [the plaintiff] on a PIP was an adverse employment action"); *Okonkwo v. Arizona State Univ.*, No. CIV 01-1231-PHX-SRB, 2003 WL 26117561, at *9 (D. Ariz. Dec. 22, 2003), *aff'd*, 124 Fed. Appx. 510 (9th Cir. 2005) ("the expiration of a contract without renewal . . . likely would be

considered an adverse employment action"). Accordingly, Plaintiff satisfies the third prong of a prima facie case under Title VII.

Fourth, Plaintiff argues that she was treated differently than her Hispanic co-workers based on her race. (*See* Doc. 62 at 14). Regarding the Student Services position, Defendant argues that Plaintiff was not similarly situated to the Hispanic individual who got the job because "Spanish fluency was a job requirement, and Plaintiff does not speak Spanish." (Doc. 57 at 8 (Defendant does not provide a citation for this point in its Motion)).[6] Conversely, Plaintiff "denies that Spanish was a requirement" and states that Defendant "advertised the job as Spanish preferred but not required." (PSOF ¶ 24 (citing Doc. 67-7 at 7)). Moreover, Plaintiff contends that the individual hired over her for the Student Services position "did not speak fluent Spanish and asked for help with [] Spanish." (PSOF ¶ 24). Plaintiff next claims that the successful candidate's immediate predecessor also did not speak Spanish. (*Id.*). Defendant represents that the individual it hired for the position "was *nearly* fluent in Spanish," which does not meet its own purported requirement of fluency. (Doc. 57 at 8 (emphasis added)).[7] The Court finds that there are disputed issues of fact regarding the job requirements for the Student Services position and qualification distinctions between Plaintiff and the successful candidate.[8] In viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff makes a prima facie case that she was treated differently than the successful Student Services candidate

---

[6] At oral argument, however, Defendant's counsel stated that Defendant "*preferred* … someone in that position to be able to speak Spanish." (Oral Argument Transcript ("Tr.") at 42:8–9 (emphasis added)). The Court observes this is inconsistent with Defendant's briefing. (Compare *id.*, *with* Doc. 57 at 3, 8 (stating that Spanish fluency was a "requirement")).

[7] At oral argument, Defendant similarly conceded that the individual it hired over Plaintiff "is not fluent, but [is] *conversational*." (Tr. at 42:11 (emphasis added)).

[8] The parties also present different positions on which computer programs the position required candidates be familiar with. (*Compare* PSOF ¶ 24 ("The most important aspect of the job was knowledge of a computer program called Synergy . . . [the interviewer] did not [ask] about Microsoft"), *with* Doc. 57 at 8 (arguing that the successful candidate also got the position because the candidate "knew different computer programs" than Plaintiff), *and* Doc. 68 at 6 (citing the successful candidate's "knowledge of . . . the entire Microsoft Office suite" as a distinguishing credential)).

who does not belong to her protected class.

Regarding the PIP, Plaintiff contends that her Hispanic co-workers engaged in the same conduct without facing similar discipline. (*See* Doc. 62 at 14). Defendant contends that Plaintiff was written up and placed on a PIP, in part, because "no one socialized or misused their cell phone as much as Plaintiff did." (Doc. 69 at 5). Conversely, Plaintiff contends that "[h]er Hispanic coworkers could socialize, freely use their cell phones and take notes without being written up." (Doc. 62 at 14 (citing Doc. 68-1 at 5 (a former co-worker supports Plaintiff's contention that she was not "on her personal calls in an excessive manner"))). The Court finds that there are disputed issues of fact regarding Plaintiff's conduct in the workplace and how Plaintiff's conduct compares to that of her Hispanic co-workers who were not disciplined for the alleged conduct.

Regarding the non-renewal of Plaintiff's contract, Defendant contends that "Plaintiff cannot establish that she was doing her job satisfactorily when she was non-renewed[, which] defeats her disparate treatment claim." (Doc. 57 at 8). Consistent with the reasoning herein, the finding that there is a disputed issue of fact regarding Plaintiff's performance defeats the premise of Defendant's argument. *See supra* Part IV(A)(2)(a).[9] In viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff establishes all four elements of a prima facie case of disparate treatment under Title VII.

### b.     Burden-Shifting Framework

In analyzing Plaintiff's prima facie case, the Court examined the "legitimate, nondiscriminatory reasons" provided by Defendant for the challenged employment actions. *Cornwell*, 439 F.3d at 1028; *see also supra* Part IV(A)(2)(a). Specifically, Defendant argues that Plaintiff was not selected for the Student Services position because she lacked the required skills possessed by the successful candidate. (*See* Doc. 57 at 8). Plaintiff, however, contends that Spanish fluency was not required and that the successful candidate was nonetheless not fluent in Spanish either. (PSOF ¶ 24). The Court cannot conclude

---

[9] Plaintiff also provides an example of another co-worker whose contract was renewed despite being on a PIP, and a Hispanic co-worker who was transferred to another school "when issue[s] arose with his work," rather than non-renewed. (Doc. 62 at 8).

which position is most credible at the summary judgment stage, particularly without a copy of a job description. *See Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" at the summary judgment stage). Accordingly, the Court finds that Plaintiff raises a genuine issue of material fact as to whether Defendant's proffered reason for selecting another candidate for the Student Services position was pretextual. *See Drottz*, 2013 WL 6157858, at *6 (citation omitted).

Similarly, Plaintiff raises genuine issues of fact as to Defendant's "legitimate, nondiscriminatory reasons" for placing Plaintiff on a PIP and not renewing her contract, respectively. *Cornwell*, 439 F.3d at 1028; *see also supra* Part IV(A)(2)(a). First, Plaintiff contends that she acted in like manner with her Hispanic co-workers—with the support of a corroborating witness—who were not placed on PIPs and did not receive discipline for similar actions. (*See* Doc. 62 at 14 (citing Doc. 68-1 at 5)). Next, in an effort to negate Defendant's position that performance was the reason for her non-renewal, Plaintiff contends that her performance was indeed satisfactory, and complaints were based on false information provided by her Hispanic co-workers. (*See* PSOF ¶ 12 (citing Doc. 67-7 at 3 9)). Accordingly, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's disparate treatment claims.[10]

### B. Hostile Work Environment Claims (Counts I and VI)

Plaintiff similarly asserts hostile work environment claims under 42 U.S.C. § 1981 and Title VII. (*See* Doc. 25 at 2 (Counts I and VI, respectively)).[11]

---

[10] Additionally, Defendant argues that "the actors who non-renewed Plaintiff were the same actors who had hired her," thus creating a "strong inference" of no discriminatory motive. (Doc. 57 at 9 (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (holding that a strong inference applies when "both actions occur within a short period of time;" there, the first action occurred in April with the adverse action occurring the same August))). Here, Plaintiff was non-renewed "three years" after she was initially hired by Defendant and there was at least some turnover among those involved in the interviewing and non-renewal processes. (*See id.* at 2, 9 (the Assistant Principal who interviewed Plaintiff appeared to no longer be involved at the point at which Plaintiff was non-renewed and the new Assistant Principal, who did not interview Plaintiff, was directly involved with the non-renewal decision)). Accordingly, the Court finds this inference does not overcome the genuine issues of fact identified herein.

[11] Although the Complaint (Doc. 25) does not distinguish between Plaintiff's

### 1. Legal Standard

To prevail on a hostile work environment claim on the basis of race, a plaintiff must show: "(1) that [s]he was subjected to verbal or physical conduct of a racial [] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citation omitted). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995). To determine if the conduct was sufficiently severe or pervasive to support a claim, "the Court should look at all the circumstances; including, the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating; and whether the conduct unreasonably interferes with employee's work performance." *Drottz*, 2013 WL 6157858, at *10 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

### 2. Analysis

Here, Plaintiff provides several examples of conduct that she argues gave rise to a hostile work environment. Specifically, Plaintiff claims that her co-workers excluded her from office events, spoke Spanish to each other in the office—which she did not speak— and looked at her and laughed, and left a photograph of Hispanic co-workers on her desk labeled, "Smile every day, 100 Burrito Nation." (*See* Doc. 57 at 9–10; PSOF ¶ 19). Plaintiff states that she "believed her co-workers placed the 'Burrito Nation' picture on her workstation as part of a plan to get rid of her" in delineating who was and was not (her) part of the group. (PSOF ¶ 19; DSOF ¶ 19 (Plaintiff testified in her deposition that the caption "meant that Hispanics rule, that 'we're 100 percent Hispanic nation, and you're not one of us.'")).[12] Plaintiff claims that the allegedly unwelcomed acts occurred only after she

_____

"hostile work environment and/or disparate treatment" claims, the Court will do so herein. (*See* Doc. 25 at 2).

[12] The Ninth Circuit periodically uses the website "Urban Dictionary" to provide additional context for slang terms. *See, e.g.*, *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1044 n.13 (9th Cir. 2015). Urban Dictionary defines the term

applied for the Student Services position ultimately attained by a Hispanic individual. (PSOF at 17–18). Plaintiff continues that her co-workers advanced their alleged plan to rid her from the office by lodging false complaints against her, which led to contentious meetings. (PSOF ¶¶ 13, 23).

### a. Elements (1) and (2)

First, Plaintiff implicitly argues that the conduct at issue was of a "racial nature" by the fact that she was the only African-American in the office and all of the co-workers who allegedly targeted her are Hispanic. (PSOF at 13). Next, Plaintiff argues that the conduct was unwelcomed based on her complaints to management regarding the "Burrito Nation" picture and other alleged instances of bullying, which Plaintiff claims were disregarded without proper consideration or remedial action. (PSOF at 18). Plaintiff further alleges the conduct was so unwelcomed that she "took physically ill" as a result of workplace confrontations and "began seeing a therapist to cope with the hostility at work." (PSOF at 19). Defendant does not substantively contest Plaintiff's arguments as to the first two elements, but rather confines its arguments to the third element of hostile work environment claims. (*See* Doc. 57 at 9–10). Accordingly, the Court finds that Plaintiff satisfies the first two elements of her hostile work environment claims at this stage.

### b. Element (3)

As to the third element, Defendant argues that "[t]hese incidents do not come close to the severe, pervasive conduct required to support a hostile work environment claim." (Doc. 57 at 10). "In assessing whether a work environment is sufficiently hostile, the [C]ourt examines the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017) (internal quotation marks and citation omitted). "The required level of severity or seriousness varies inversely with the

---

"100" as follows: "to stay true; to be real; straight up." *100*, Urban Dictionary, https://www.urbandictionary.com/define.php?term=100 (last visited June 20, 2019).

pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (internal quotation marks and citation omitted). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* at 872 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).

Defendant points out that "Title VII is not 'a general civility code for the American workplace.'" *Porter v. California Dept. of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Oncale*, 523 U.S. at 80). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga*, 847 F.3d at 687 (internal quotation marks and citation omitted). "It is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position." *Id.* (internal quotation marks and citation omitted).

Several of the incidents Plaintiff raises bear on civility, rather than actionable employment discrimination. The Ninth Circuit has held that excluding a co-worker from office events, in isolation, does not rise to the level of actionable discrimination. *See, e.g.*, *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action" (citing *Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859 (9th Cir. 1996) ("mere ostracism in the workplace is not enough to show an adverse employment decision"))). Likewise, the fact that Plaintiff's Hispanic co-workers allegedly made fun of Plaintiff by speaking Spanish to each other and laughing in front of Plaintiff does not rise to the level of a Title VII violation. *See, e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (finding that occasional, race-based jokes told behind the back of a minority employee—"while offensive and inappropriate"—were insufficient to support a hostile work environment claim); *Jordan v. Clark*, 847 F.2d 1368, 1374–75 (9th Cir. 1988) (finding no hostile work

- 16 -

environment where "off-color" jokes were told in workplace).

Conversely, Plaintiff argues that the fact that she was repeatedly singled out as the only member of her race in the office contributed to a hostile work environment. (*See* Doc. 62 at 13). Plaintiff cites the "Burrito Nation" incident as a turning point in her employment experience. (PSOF ¶ 20 (Plaintiff "took the Burrito Nation [picture] as a threat")). While Plaintiff described the incident as an act of "bullying," Defendant does nothing to provide an alternative explanation for the photograph beyond announcing that its investigation concluded that "the photograph was neither discriminatory nor bullying towards Plaintiff." (Doc. 57 at 12; *see also* Doc. 69 at 8 n.4). In viewing the evidence in the light most favorable to Plaintiff, and without the benefit of an alternative explanation, the Court cannot conclude that the "Burrito Nation" photograph would not be seen as discriminatory to a reasonable person in Plaintiff's position.

Next, Plaintiff contends that following her complaints of the "Burrito Nation" incident, the District Associate Superintendent only "half-heartedly conducted an investigation into [Plaintiff's] complaints" and did not interview principal actors who were members of his same race. (Doc. 62 at 6). In turn, Plaintiff's Hispanic co-workers allegedly "began keeping false notes on [Plaintiff's] workday," which turned into complaints against Plaintiff, "hostile meetings" with supervisors, and Defendant placing Plaintiff on a PIP. (*Id.* at 7; *see also* PSOF ¶ 21; Doc. 67-2 at 2–15). At one such meeting, Plaintiff contends that a superior "became physically threatening to the point where [another superior] had to restrain [the first]." (Doc. 62 at 13). Plaintiff argues that she was specifically singled out for placement on a PIP and subjected to different rules than her Hispanic co-workers, which included an order that she not speak to a friendly co-worker. (*Id.* at 6 (Plaintiff's supervisors "made special rules that applied only to her," while her Hispanic co-workers allegedly engaged in similar activities without discipline)). The negative health effects Plaintiff suffered further demonstrates the severity of the conduct. (*See* PSOF at 19); *see also Reynaga*, 847 F.3d at 687.

All together, the confluence of circumstances demonstrates the pervasiveness of the

allegedly discriminatory conduct. *See Drottz*, 2013 WL 6157858, at *10. The fact that Plaintiff was the only African-American in her office and subjected to allegedly hostile conduct also strengthens her claim. *See, e.g.*, *Cornwell*, 439 F.3d at 1023 (reversing a grant of summary judgment on a racial discrimination claim, in part based on the fact that the plaintiff was singled out as the "only African American member" of her work team); *Washington*, 10 F.3d at 1434 (finding "that an atmosphere of racial tension existed in the office" to support an employment discrimination action when the plaintiff was singled out as "the only black person" in an office where members of other races were allegedly treated more favorably). Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable trier of fact could conclude that the conduct endured by Plaintiff was sufficiently severe or pervasive to create a hostile work environment. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claims.

## C.    Failure to Hire Claims on the Basis of Race (Counts III and IV)

Next. Plaintiff asserts claims for "failure to hire based upon race" under 42 U.S.C. § 1981 and Title VII. (*See* Doc. 25 at 2 (Counts III and IV, respectively)). These claims are functionally identical to Plaintiff's disparate treatment claims because "a claim for failure to hire [is] based on disparate treatment." *Ting v. Adams & Associates, Inc.*, No. 2:16-CV-01309-TLN-KJN, 2017 WL 4422508, at *5 (E.D. Cal. Oct. 5, 2017); *see also Carroll v. City of Tempe*, No. 2:10-CV-01425 JWS, 2010 WL 5343311, at *2 (D. Ariz. Dec. 22, 2010) (addressing a claim for "failure to promote" as a disparate treatment claim).

"A court may dismiss duplicative claims in its discretion." *W. Veg-Produce, Inc. v. Lexy Group*, No. 2:18-CV-00180-ODW (AGRs), 2018 WL 1804689, at *5 (C.D. Cal. Apr. 16, 2018) (citation omitted); *see also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the suit."). Claims are duplicative when they "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Wultz*, 755 F. Supp. 2d at 81; *see also Grismore v. Capital*

*One F.S.B.*, No. CV 05-2460-PHX-SMM, 2007 WL 841513, at *6 (D. Ariz. Mar. 16, 2007) (dismissing the duplicative claim upon recognizing an "attempt to yield two separate yet identical claims out of one incident"). Because Plaintiff relies on the same underlying adverse employment actions and related allegations to establish her disparate treatment claims (Counts I and VI) and failure to hire on the basis of race claims (Counts III and IV), the Court will dismiss the latter claims as duplicative.

**D.     Retaliation (Counts II and V)**

Plaintiff also asserts retaliation claims under 42 U.S.C. § 1981 and Title VII. (*See* Doc. 25 at 2 (Counts II and V, respectively)).

**1.     Legal Standard**

To establish a prima facie case of retaliation under 42 U.S.C. § 1981 or Title VII, a plaintiff must establish: "(1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment decision; and (3) that a causal link exists between the protected activity and the employment decision." *Romero v. UPS*, No. CV 04 1787 PCT JAT, 2007 WL 779693, at *4 (D. Ariz. Mar. 12, 2007) (citing *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002)). Notably, "the causal link between the protected activity and the employer's action in a retaliation claim under Title VII must be proved according to traditional principles of but-for causation." *Drottz*, 2013 WL 6157858, at *14 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

"If [the plaintiff] establishes a prima facie case, then the burden shifts to [the defendant] to establish a non-retaliatory reason for the adverse employment decision." *Id.* (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). "If [the defendant] offers a legitimate, non-retaliatory reason, then the burden returns to [the plaintiff] to show that the reason is a pretext for retaliation." *Id.* (citing *Brooks*, 229 F.3d at 928).

**2.     Analysis**

First, Plaintiff engaged in a protected activity by filing an EEOC charge. *See, e.g., Gil v. JPMorgan Chase Bank, N.A.*, No. CIV 07-0181-PHX-SMM, 2009 WL 166930, at *6 (D. Ariz. Jan. 26, 2009) (filing an EEOC charge establishes the first element of a prima

facie claim for retaliation). Second, Plaintiff suffered the adverse employment actions of being placed on a PIP and later non-renewed after she filed the EEOC charge. *See, e.g.*, *Isom v. JDA Software Inc.*, No. CV-12-02649-PHX-JAT, 2015 WL 3953852, at *11 (D. Ariz. June 29, 2015) (reasoning that a plaintiff "suffered adverse employment actions when she was placed on the [PIP]" and later terminated). Third, Plaintiff implicitly argues that there is a causal link between her filing an EEOC charge and placement on a PIP because Defendant "did not put her on a PIP until after [Plaintiff] filed an EEOC charge." (PSOF ¶ 42).

"With respect to causation, Plaintiff presents no direct evidence that her complaints or filing of the EEOC charge were the but-for cause of an adverse employment action." *Isom*, 2015 WL 3953852, at *12; (*see also* PSOF). "This raises the issue as to whether temporal proximity alone can support a causal link between a protected activity and an adverse employment action." *Id.* While previously sufficient under Ninth Circuit law, the Supreme Court recently clarified "that proximity in time combined with knowledge of the protected activity is insufficient for the Court to find a disputed issue of fact on causation." *Id.* (citing *Drottz*, 2013 WL 6157858, *15 (internal quotation marks omitted)). Because "Plaintiff's contentions rest entirely on the temporal proximity between these actions and her complaints [and] Plaintiff offers no evidence showing that retaliation was a motivating factor for these actions, much less their but-for cause," Plaintiff fails to satisfy element three of a prima facia case for retaliation under Title VII. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims for retaliation. [13]

---

[13] The operative Complaint (Doc. 25) scantly mentions the term "retaliation." (*See* Doc. 25 at 5, 8). Because Plaintiff did not set forth the facts upon which each specific claim is based, nor does Plaintiff address the specifics of her retaliation claims in her Response (Doc. 62), the Court can only hypothesize about the basis for her retaliation claims. (*See generally id.*).

The Court best understands Plaintiff's retaliation claims to relate to the protected activity of filling an EEOC charge because Plaintiff indicates that Defendant acted in "retaliation" after she filed the charge. (*See id.* at 8). Elsewhere, Plaintiff complains that Defendant's inability to take sufficient action "to rectify [Plaintiff's] situation" in response to Plaintiff's complaints was a form of "retaliation against employees that report bullying." (*Id.* at 5). To the extent Plaintiff alleges Defendant retaliated against Plaintiff for reporting discrimination elsewhere by failing to act with appropriate swiftness or sternness, the Court finds that such a response by Defendant does not rise to the level of an adverse employment

**E.** **Failure to Hire Claim on the Basis of Age (Count VII)**

Finally, Plaintiff asserts a claim for "failure to hire based upon age" under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"). (*See* Doc. 25 at 2 (Count VII)).

**1. Legal Standard**

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual [who is at least forty years of age] . . . because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). In "disparate treatment" cases such as this, where the plaintiff alleges she was singled out for discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (internal quotation marks and citations omitted). Courts "evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas*." *Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *McDonnell Douglas Corp.*, 411 U.S. at 792); *see supra* Part IV(A)(1).

"A plaintiff makes out a prima facie case of intentional discrimination under the ADEA if [s]he demonstrates that [s]he was within the protected class of individuals between forty and seventy years of age, that [s]he applied for a position for which [s]he was qualified, and that a younger person with similar qualifications received the position." *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). Despite the intermediate burden shifting, "the ultimate burden of proof remains always on [the plaintiff]." *Coleman,* 232 F.3d at 1281; *see also Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

---

decision, and thus fails to satisfy prong two of a prime facie case of retaliation. *See Day v. LSI Corp.*, 705 Fed. Appx. 539, 541 (9th Cir. 2017) (unpublished) (finding that a district court properly granted summary judgment on a retaliation claim because, even if true, the plaintiff did not establish an adverse employment decision through allegations that the defendant "fail[ed] to investigate complaints of discriminatory comments").

## 2. Analysis

Here, it is undisputed that Plaintiff is 51 years old. (Doc. 62 at 2). Thus, Plaintiff falls within the ADEA's protected class of individuals. *See* 29 U.S.C. § 631(a). As reasoned herein, there is a disputed issue of fact as to whether Plaintiff was qualified for the Student Services position and whether the successful candidate had similar or superior qualifications. *See supra* Part IV(A)(2)(a)–(b). It is also undisputed that Defendant believes the successful Student Services candidate to be younger than Plaintiff. (PSOF ¶ 29 (citing Doc. 68 at 17 (estimating that the successful candidate was "less than 40 [years old]"))).

Unlike Plaintiff's claims on the basis of race, Plaintiff does not identify, nor does the Court find, any evidence whatsoever that her age "actually motivated" any of Defendant's employment decisions. (*See generally* PSOF; Doc. 62). Rather, Defendant asserts evidence, and Plaintiff identifies nothing to contest, that when interviewing candidates for the Student Services position, the Assistant Principal "did not ask anyone's age and did not know anyone's age." (DSOF ¶ 29 (citing Doc. 58 at 62)). Without pointing to any evidence in the record to indicate whether age was a factor in Defendant's decision-making process, Plaintiff cannot carry her burden to show that Defendant's legitimate, non-discriminatory reasons regarding qualifications and performance could be mere pretext for age discrimination. *See Reeves*, 530 U.S. at 141. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for failure to hire based upon age.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 57) is **GRANTED in part**, and **DENIED in part**. Summary Judgment is granted to Defendant on Plaintiff's claims for retaliation (Counts II and V) and failure to hire on the basis of age (Count VII), but denied as to Plaintiff's claims for disparate treatment (Counts I and VI) and hostile work environment (also Counts I and VI).

**IT IS FURTHER ORDERED** that Plaintiff's claims for failure to hire on the basis of race (Counts III and IV) are dismissed as duplicative.

**IT IS FURTHER ORDERED** that Defendant is entitled to summary judgment on any claims for punitive damages and any claims brought by Paul Lucas. The Clerk of the Court shall not enter judgment at this time.

Dated this 15th day of July, 2019.

James A. Teilborg
Senior United States District Judge